# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRANDON S. LAVERGNE (#424227)**                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                              **NO. 15-0034-BAJ-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.   Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 18, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRANDON S. LAVERGNE (#424227)                    CIVIL ACTION

VERSUS

N. BURL CAIN, ET AL.                             NO. 15-0034-BAJ-EWD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants' Motions to Dismiss (R. Docs. 44 and 57) and Plaintiff's Motion for Summary Judgment (R. Doc. 82).

### I.    BACKGROUND

*Pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against former Warden N. Burl Cain, Legal Programs Director Trish Foster, Major Larry Smith, Major Michael Vaughn, Lt. Cindy Vannoy, Classification Supervisor Amber Vittirai and an unidentified Supervisor of Investigative Services.[1]  A summary of Plaintiff's allegations is as follows:

- At some time after July 2013, Plaintiff was informed by prison defendant Michael Vaughn that Plaintiff could no longer send mail to the address of his teenage daughter, Bethany. According to Plaintiff, this was at the request of Bethany's mother, Lainey Martinez because Plaintiff had filed a lawsuit against Ms. Martinez.   *See* R. Doc. 1 at p. 5

- In early 2014, Plaintiff was informed that he was being placed on "mail watch," pursuant

---

        1       Inasmuch as Plaintiff has taken no action to identify and serve the unidentified Supervisor of Investigative Services, the Court does not consider this defendant to be properly before the Court.

to which his mail was subject to being monitored.   According to Plaintiff, this was done in retaliation for Plaintiff's two prior lawsuits against prison officials and for his attempts to obtain outside legal assistance.   Plaintiff complains that numerous items of legal and personal mail were thereafter delayed "for up to 3 weeks," and some items disappeared, causing problems with Plaintiff's prosecution of pending lawsuits.   Specifically, a filing addressed to the United States Court of Appeals "disappeared" and Plaintiff was required to re-write and re-send it at his expense; he was required to request an extension of time in another matter; several motions addressed to this Court in an unrelated proceeding "has disappeared and has never been filed"; and an "amended brief" that was submitted for filing on February 21, 2014 in the Western District of Louisiana was not in fact docketed until March 19, 2014, approximately a month later and allegedly "2 weeks after the suit had been denied."   *See id*. at pp 11-12.   Plaintiff attributes these delays and incidents to defendant Cindy Vannoy, who is "in charge of the mail room," to defendant Trish Foster, who is "in charge of legal programs … [and] electronic filing," or to an unidentified "warden or colonel … [with] investigative services" at LSP.   *See id.* at p. 12.

- In September 2014, Plaintiff's lawsuit against Lainey Martinez had allegedly proceeded through the courts and was lodged in the United States Supreme Court, and Plaintiff received notice that he was required by Supreme Court rules to send copies of his appellate brief to Ms. Martinez.   Because Plaintiff was prohibited from sending mail to Ms. Martinez' address, Plaintiff forwarded the legal paperwork to members of his family for *them* to send to Ms. Martinez.   The paperwork addressed to Ms. Martinez was thereafter returned undelivered, however, with a forwarding address for Ms. Martinez' mother, Jessica Vasseur.   Accordingly, Plaintiff's family members re-sent the paperwork to

Jessica Vasseur, who became upset and complained to the local district attorney and later to prison officials. *See id.* at pp. 5-6.

- Upon learning of the above complaints, LSP Investigator Michael Vaughn ordered that Plaintiff be placed in administrative segregation and subsequently charged Plaintiff with circumventing or attempting to circumvent a non-contact order, a charge that Plaintiff alleges is unfair because (1) he was *required* by Supreme Court rules to send copies of his appellate brief to Lainey Martinez, (2) he did not personally violate the non-contact order because the paperwork was sent to Ms. Martinez' address by family members, not by Plaintiff, and (3) he was punished for sending paperwork, not to Ms. Martinez' address, but to Jessica Vasseur, a person who he had never been told not to contact. Notwithstanding, Plaintiff was found guilty of the disciplinary charge on September 28, 2014, at a disciplinary hearing conducted by defendants Larry Smith and Amber Vittirai, and was sentenced to a loss of telephone privileges for 28 days. *See id.* at p. 7. Plaintiff further alleges that, because of an LSP policy that denies contact visits for 6 months to inmates found guilty of disciplinary charges, he also (indirectly) lost contact visits for that 6-month period. *See id.* and R. Doc. 1-1 at pp. 3-4.

- Plaintiff appealed the above-referenced disciplinary charge and punishment, but he complains that defendant Warden Cain failed to respond to the appeal within applicable time limits. Accordingly, Plaintiff submitted an administrative grievance ("ARP") to prison officials complaining about the non-response to his disciplinary appeal. Plaintiff complains, however, that defendant Trish Foster rejected Plaintiff's ARP because it purportedly pertained to disciplinary matters that "may not be appealed through the ARP system" under prison rules. *See* R. Doc. 1 at pp. 7-8 and R. Doc. 1-1 at p. 5.

- On or about December 18, 2014 Plaintiff was informed that he was being placed on "mail block," meaning that he could only send out legal mail and personal mail to persons on his approved visitors' list.   When Plaintiff asked why, he was informed that this was requested by defendant Vaughn and ordered by defendant Burl Cain because Plaintiff had contacted members of his victim's family, which Plaintiff denies.   *See id.* at pp. 8-9.   Plaintiff complains that numerous items of mail have since been returned to him unsent with notices indicating that he is on "mail block."   Plaintiff also complains that other items of mail have been retained unsent without any notice to him in violation of prison rules.

- On or about December 22, 2014 defendant Vaughn again issued Plaintiff a disciplinary report, this time for sending a Christmas card to Plaintiff's son, Braden.   Plaintiff was informed by defendant Vaughn that Plaintiff had been told 2½ years previously not to send mail to his son's address.   Plaintiff denies that he was ever so instructed, and he complains that he was nonetheless improperly found guilty of the charge – allegedly based only upon "hearsay" evidence – and sentenced to six months in disciplinary segregated confinement. As part of the sentence, Plaintiff alleges that he also lost contact visits and telephone privileges (except for legal calls and one personal call per month) for the same period.   *See id.* at p. 9.   It appears that the finding of guilt in connection with this disciplinary report was later overturned on appeal, *see* R. Doc. 62 at p. 9, but Plaintiff complains that this was only after he had already served most of the 6-month sentence.

- On or about January 1, 2015, defendant Vaughn removed a photograph of Plaintiff's son from a letter sent to Plaintiff by his former fiancée, Tiffany Gilcrease, without providing notice of the confiscation.   *See id.* at p. 13.   In addition, on January 12, 2015, defendant Vaughn allegedly contacted Tiffany Gilcrease and threatened that if she continued to send

Plaintiff photographs of his children, she would be placed on "permanent mail block." According to Plaintiff, this threat was unwarranted and was an abuse of authority by defendant Vaughn.  Plaintiff further asserts a belief that defendant Vaughn was friends with Lainey Martinez' husband or family and was harassing Plaintiff "as a personal favor to them."  *See id*. at p. 11.

Plaintiff filed an amendment to his Complaint in February 2015 (R. Doc. 3), complaining that several letters he had submitted for delivery in the month of January 2015 were not received.   In addition, Plaintiff complained therein that he was denied all visits with Tiffany Gilcrease between September 26 and December 22, 2014.

Finally, Plaintiff filed an amendment to his Complaint in March 2015 (R. Doc. 7), complaining about the conditions to which he was being subjected in punitive segregated confinement, including an unhygienic cell, limitations on exercise, visitation and telephone calls, cold showers, dirty clothing, and restrictions upon property and canteen purchases.[2]

## II.    LAW AND ANALYSIS

### A.  Plaintiff's Motion For Summary Judgment Should Be Denied.

Addressing first Plaintiff's Motion for Summary Judgment (R Doc. 82), the Court concludes that this motion is subject to dismissal both because it is in improper form and because it is unsupported by competent summary judgment evidence.   In this regard, Plaintiff has not complied

---

2        In March 2015, Tiffany Gilcrease was granted leave to intervene as a co-plaintiff and assert her own claims, based on an alleged violation of her First Amendment right of association.   *See* R. Doc. 9.   She subsequently amended her claims to assert a new claim against an unidentified correctional officer, "BR," *see* R. Doc. 13, based on an assertion that on or about March 6, 2015 the officer retaliated against her by removing her from plaintiff LaVergne's approved visitor list after she asked to be joined as a plaintiff in this case.   Tiffany Gilcrease has since voluntarily dismissed her claims asserted in this proceeding.   *See* R. Docs. 56 and 64.

with Local Rule 56(a) of this Court which requires that "[e]very motion for summary judgment shall be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."   In addition, whereas summary judgment is appropriate when there is no genuine disputed issue as to any material fact, and the moving party is able to show that he is entitled to judgment as a matter of law, Fed. R. Civ. P. 56, the moving party always bears the initial burden of showing the absence of a genuine issue of material fact.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).   This is done by informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.   The nonmoving party is not required to respond to the motion until the movant has made the required showing in support thereof.   *Id*.   It is only after the movant has carried his burden of proof that the burden shifts to the non-movant to show that the entry of summary judgment is not appropriate.   *See Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000).   In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

Based on the foregoing, the Court concludes, on the record before it, that Plaintiff's motion should be denied.   Not only has he failed to provide a statement of undisputed material facts as required by Local Rule, but he has failed to provide competent summary judgment evidence reflecting his entitlement to judgment in his favor.   Specifically, the documentation attached to Plaintiff's motion is not certified or otherwise authenticated and so is not properly before the Court

for consideration.    Further, the documentation does not clearly support his entitlement to relief. Accordingly, Plaintiff has not made a sufficient showing of entitlement to judgment or of the absence of any genuine issues of disputed material fact.

### B.  Defendants' Motion To Dismiss Official Capacity Claims Should Be Granted.

Turning to Defendants' motions to dismiss, Defendants rely upon Rule 12(b)(6) of the Federal Rules of Civil Procedure and assert that Plaintiff has failed to state a claim upon which relief may be granted against them.    In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6).    Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level."    *Bell Atlantic Corp. v. Twombly, supra*, at 555.    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"    *Ashcroft v. Iqbal, supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly, supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."    *Id*.    It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"    *Id*. at 679.    "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"    *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint."    *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).    Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a

*pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted).   Even a *pro se* complainant, however, must plead "factual matter" that permits the court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678.   The court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal, supra*, 556 U.S. at 678 (internal quotation marks omitted).

In the instant motions, Defendants first seek dismissal of Plaintiff's claim asserted against them in their official capacity for monetary damages.[3]   In this regard, Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989).   In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, Plaintiff's claim asserted against Defendants in their official capacities for monetary damages is subject to dismissal.   In contrast, Plaintiff's claim for monetary damages asserted against Defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color

---

3       Whereas Plaintiff's original Complaint was unclear as to whether he was suing Defendants in their individual or their official capacities, the Court liberally interprets Plaintiff's Complaint as naming Defendants in both capacities. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (instructing that the pleadings of *pro se* plaintiffs should be interpreted liberally).

of state law, is not treated as a suit against the state.   *Id.* at 29.   In addition, a claim for injunctive relief asserted against state officials in their official capacities is not barred by the Eleventh Amendment because such a claim is also not seen to be a claim asserted against the state.   *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 Am. Jur. 2d *Civil Rights* § 101.

### C.   Plaintiff Is Not Entitled To Recover Compensatory Damages From Defendants Because He Has Not Shown Physical Injury.

Turning to Plaintiff's claims that are not barred by the Eleventh Amendment, the Court further agrees with Defendants that Plaintiff is not entitled to recover compensatory damages from Defendants in this case.   Specifically, pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury."   Plaintiff does not suggest in his Complaint that he has suffered any physical injury as a result of the events alleged.   Accordingly, he is precluded from the recovery of compensatory damages and will be limited to a recovery of nominal or punitive damages if successful.   *See Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007).   In order to recover punitive damages, however, he would be required to make a showing that Defendants violated his constitutional rights with "evil intent" or "callous indifference."   *See Allen v. Stalder*, 201 Fed. Appx. 276 (5th Cir. 2006), *citing Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003).

### D.   Plaintiff Failed To Allege Direct Personal Involvement In A Violation Of His Constitutional Rights As To Defendants Vannoy, Foster, Vittirai And Smith.

The Court next addresses Defendants' assertion that they are entitled to qualified immunity in connection with Plaintiff's claims.   Specifically, Defendants contend that Plaintiff's allegations are insufficient to establish that any Defendant has participated in a violation of Plaintiff's

constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks.   *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012).   Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred.   *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first.   This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.   *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted.   *Id.* at 202.   The assertion of the qualified immunity defense alters the summary judgment burden of proof.   *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).   Once a defendant pleads qualified immunity, the burden shifts to Plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."   *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.

Undertaking the qualified immunity analysis with respect to Plaintiff's claims, the Court concludes that, for the most part, Defendants' motions to dismiss should be granted, dismissing

Plaintiff's claims asserted against them in this case.

First, the Court will address Plaintiff's claims asserted against certain defendants against whom the Court concludes Plaintiff has failed to sufficiently allege a direct and personal involvement in any violation of Plaintiff's constitutional rights.   In this regard, 42 U.S.C. § 1983, by its terms, provides an avenue for relief only for violations of federal constitutional or statutory law, and not every complaint by an inmate regarding incidents or conditions occurring within the prison context may be seen as rising to such level.   *See, e.g., Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights").   In addition, in order for a prison official to be found liable under § 1983, the official must be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed.   *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).   Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.   *See Ashcroft v. Iqbal, supra*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).   *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of respondeat superior or vicarious liability").   Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.   *Lozano v. Smith, supra*, 718 F.2d at 768.

First, with regard to defendant Cindy Vannoy, Plaintiff alleges only that this defendant is "in charge of the mail room" at LSP and is responsible for ensuring that inmates' legal and personal mail is properly handled.   *See* R. Doc. 1 at p. 12.   Plaintiff further alleges that, since his placement on "mail watch" at LSP, numerous items of his mail have been delayed or caused to disappear. *Id.*   As a result, Plaintiff complains that defendant Vannoy is responsible for this wrongdoing, specifically because of her inadequate supervision and/or lack of oversight of the prison mailroom. *See* R. Doc. 54 at p. 3.   In the Court's view, this allegation is one of purely supervisory responsibility on the part of defendant Vannoy and, as noted above, such responsibility may not form the basis for liability under § 1983.   *See Lozano v. Smith, supra*.   Plaintiff does not otherwise identify any person employed in the mailroom at LSP who has intentionally mishandled his mail or caused items thereof to be unreasonably delayed or destroyed.   Further, a certain amount of unintentional delay is a likely and reasonable consequence of the imposition of a "mail watch" or "mail block" by prison officials, and such delay may not be characterized as an intentional interference by the LSP mail room with Plaintiff's constitutional rights.   While the Court will further address below Plaintiff's contentions regarding the imposition of the "mail watch" and "mail block," the Court nonetheless concludes that Plaintiff's claim asserted against defendant Vannoy in her managerial role as supervisor of the prison mailroom is not a basis of liability as to this defendant.   Accordingly, the Court concludes that defendant Vannoy is entitled to dismissal of Plaintiff's claim asserted against her as a matter of law.

Turning to Plaintiff's assertions relative to defendant Trish Foster, Plaintiff first alleges that defendant Foster is "in charge of legal programs … and electronic filing" at LSP and, as such, is similarly responsible for the alleged mishandling of Plaintiff's outgoing legal mail, some of which has allegedly been delayed or caused to disappear.   See R. Doc. 1 at p. 12.   See also R. Doc. 54 at pp. 2-3.   For the reasons stated above, the Court similarly concludes that this is a

statement of purely supervisory responsibility on the part of defendant Foster which likewise may not form the basis for liability under § 1983.

Plaintiff further alleges as to defendant Foster that this defendant improperly rejected Plaintiff's administrative grievances filed in late 2014 and/or early 2015 regarding (1) defendant Cain's alleged failure to provide a timely response to Plaintiff's disciplinary appeal and (2) the imposition of a "mail block" at LSP in December 2014.   Plaintiff complains that these rejections were improper and that his claims should have been addressed through the administrative grievance process instead of being rejected as disciplinary matters to which the administrative process was not applicable.   Notwithstanding, the law is clear that Plaintiff has no constitutional right to a fair and proper handling of his administrative grievances, or to a favorable or correct response thereto, and no liability may attach for the failure of a prison official to investigate or respond appropriately to an administrative claim.   *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).   *See also Mahogany v. Miller*, 252 Fed. Appx. 593, 595 (5th Cir. 2007).   Thus, there is no legal basis for the imposition of liability as to defendant Foster for her actions in rejecting or otherwise resolving Plaintiff's administrative submissions and, as a result, this defendant is entitled to a dismissal of Plaintiff's claims asserted against her.

Turning to Plaintiff's allegations relative to defendants Amber Vittirai and Paul Smith, Plaintiff first asserts as to these defendants that they were members of the disciplinary board that found him guilty in September, 2014 of attempting to circumvent a non-contact order by indirectly routing his mail to family members for them to send to a person who he had been told not to contact.   Plaintiff asserts that this finding of guilt was unfair and improper because, *inter alia*, (1) he was *legally required* by court rules to serve the proscribed person with a copy of legal pleadings in connection with pending unrelated litigation, and (2) the mail was in fact sent to the proscribed person's mother, not to the proscribed person herself, and (3) the mail was sent by Plaintiff's

family, not by Plaintiff himself.   Notwithstanding, and irrespective of whether there is any potential validity to these arguments and assertions, there is still no basis for a finding of liability as to defendants Vittirai and Smith in connection with this claim.   Specifically, the mere fact that an inmate may have been wrongly found guilty and punished in connection with a prison disciplinary charge does not, without more, rise to the level of a constitutional violation.   *See Grant v. Thomas,* 37 F.3d 632 (5th Cir. 1994), *citing Collins v. King*, 743 F.2d 248, 253 (5th Cir. 1984).   Moreover, the law is clear that an inmate has no right to any specific due process protections in connection with prison disciplinary proceedings when the punishment imposed does not result in an atypical and significant deprivation evaluated in the context of prison life.   *See Sandin v. Connor*, 512 U.S. 472, 483 (1995).   Inasmuch as the punishment imposed in connection with the referenced disciplinary report was only the loss of 28 days of telephone privileges – and an indirect associated loss of 6 months of visitation privileges – and inasmuch as such a deprivation is not "atypical and significant" in the context of prison life, Plaintiff's claim in this regard is clearly without merit.

Finally, with regard to defendant Amber Vittirai, Plaintiff also includes an allegation that this defendant is responsible for the fact that one of his pleadings forwarded to a court in connection with other litigation was never received by the Court.   Specifically, Plaintiff asserts that Defendant Vittirai wrongly refused to allow Plaintiff to send the pleading as legal mail, and Plaintiff therefore had to send the pleading by way of the less reliable regular mail system.   *See* R. Doc. 1 at p. 20.   Notwithstanding, this claim does not rise to the level of constitutional dimension inasmuch as Plaintiff concedes that he was not *prevented* from mailing the referenced pleading by defendant Vittirai's conduct but was simply required instead to "put stamps on [it] and sen[d] it out."   Further, Plaintiff concedes that when the initial submission of his pleading was not received by the addressee court, he requested an extension of time and re-mailed the pleading

to the court.    Thus, Plaintiff suffered no legal prejudice in fact as a result of defendant Vittirai's conduct because he was not in fact prevented from mailing his pleading to the court.    As discussed hereafter, inasmuch as a showing of prejudice is a prerequisite for a claim of interference with access to the court, the Court concludes that Plaintiff does not state a claim of such interference as to defendant Vittirai, and this defendant is therefore entitled to a dismissal of this claim asserted against her.

In summary, and based on the foregoing, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted as to defendants Cindy Vannoy, Trish Foster, Paul Smith and Amber Vittirai.    Accordingly, the Court will recommend that these defendants be dismissed from this proceeding.

### E.   Plaintiff Failed to State A Claim For Retaliation Against Defendants Cain And Vaughn.

Turning to Plaintiff's claims asserted against the two remaining defendants, Warden Burl Cain (retired) and Major Michael Vaughn, the Court will first address Plaintiff's claim that the actions of these defendants have been motivated by retaliatory animus.    In this regard, it is prohibited for prison officials to take action against an inmate in retaliation for the inmate's exercise of his constitutional rights.    *See Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.    *Morris v Powell*, 449 F.3d 682, 686 (5th Cir. 2006).    Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution.    *Woods v. Smith, supra*, 60 F.3d at 1166.    Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the

exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred.   *Morris v. Powell, supra*, 449 F.3d at 684.   *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).   An inmate must allege more than his mere personal belief that he is the victim of retaliation, *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997), and inasmuch as claims of retaliation are not favored, it is Plaintiff's burden to provide more than conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred.   This places a significant burden on the inmate....   The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

*Woods v. Smith, supra*, 60 F.3d. at 1166.

Undertaking the foregoing analysis, the Court finds that Plaintiff has failed to sufficiently allege a factual basis for this claim.   Whereas Plaintiff alleges that "LSP Investigative Services" placed him on "mail watch" in early 2014 and that this was done in retaliation (1) for two lawsuits that Plaintiff had filed against prison officials and (2) for his attempts to obtain legal assistance in connection therewith, *see* R. Doc. 1 at p. 11, Plaintiff's assertions in this regard are entirely conclusory.   Plaintiff provides only limited information regarding the nature of the referenced lawsuits, the identities of the defendants named therein, or whether any defendant had actual notice, through service or otherwise, of Plaintiff's previously-filed lawsuits.   More importantly, there is no chronology of events or other evidence from which a retaliatory motive may logically be inferred.   What can be ascertained from the record is that the referenced lawsuits were apparently filed in April and June, 2013, long before the imposition of the referenced "mail watch" in 2014.   The mere fact that Plaintiff may have filed one or more lawsuits against prison officials

more than six months before being placed on "mail watch" does not, without more, provide a supporting chronology.   Accordingly, Plaintiff's claim regarding a retaliatory motive for the imposition of the "mail watch" is not supported by his factual allegations and should be dismissed.

In addition to the foregoing, Plaintiff contends that defendant Michael Vaughn acted with retaliatory motive in charging Plaintiff with two disciplinary reports, one in September and one in December, 2014.   The Court again finds that Plaintiff's assertions in this regard are entirely conclusory.   Moreover, Plaintiff will be unable to overcome the essential element of causation in connection with the referenced disciplinary reports, *i.e.,* that "but for" the purported retaliatory motive, the disciplinary reports would not have been issued.   Specifically, with regard to the first disciplinary report, the one issued in September, 2014, which charged Plaintiff with attempting to circumvent a non-contact order, Plaintiff concedes that he in fact attempted to send mail to a person with whom he had a non-contact proscription.   Whereas Plaintiff has argued, as addressed above, that he was legally obligated to serve that person and that the mail was in fact sent by family members, not by himself, these arguments do not alter the fact that there was a clear factual basis for issuance of the disciplinary report independent of any supposed retaliatory motive, *i.e.,* that Plaintiff did in fact effectively make an attempt to circumvent the non-contact order.   Thus, Plaintiff cannot establish that the report would not have been issued "but for" the alleged retaliatory motive.[4]   Further, with regard to the second disciplinary report, Plaintiff alleges in his Complaint that the report was issued because Plaintiff sent mail to his son "Braden," and Plaintiff concedes that the disciplinary report was based upon information received by defendant Vaughn that

---

[4]      Plaintiff also asserts that defendant Vaughn had an independent reason for issuance of the disciplinary report, *i.e.,* that defendant Vaughn was friends with the husband of the person who Plaintiff had been told not to contact, and that Vaughn issued the report to harass Plaintiff for contacting the family.   *See* R. Doc. 1 at p. 11.

Plaintiff had been ordered not to do so 2½ years previously by another correctional officer.   *See* R. Doc. 1 at p. 9.   Thus, whereas Plaintiff disputes the veracity of this information and complains that he was found guilty based upon "hearsay evidence," his assertions regarding the sufficiency of the evidence do not suggest that the report was based upon a retaliatory motive.   Accordingly, Plaintiff's claims of retaliation are deficient and should be rejected.[5]

### F.   Plaintiff Fails To State A Claim Against Defendants Cain And Vaughn For Issues Involving His Legal And Personal Mail.

Plaintiff also asserts a claim regarding the alleged delay, loss, mishandling, confiscation and/or destruction of certain items of his legal and personal mail (as distinguished from his claim regarding the imposition of the "mail watch" or "mail block," addressed below).   The Court concludes that this claim, as well, is subject to dismissal.   In the first place, with one exception, Plaintiff does not allege that defendants Cain and Vaughn have been personally involved in this conduct, and Plaintiff has failed to identify any person or persons in the prison mailroom or legal programs department who has had direct and personal involvement with the intentional mishandling of his mail.   *See Lozano v. Smith, supra*.   Second, the Court finds that mere delays in the transmission of Plaintiff's mail, without more, would not rise to the level of a constitutional violation in any event.   Third, the law is clear that mere negligence or even an intentional taking of Plaintiff's property, such as the photograph that Plaintiff alleges defendant Vaughn removed

---

[5]   Plaintiff also alleges that on an unspecified date, he received indirect third-hand information, relayed by two security officers who had allegedly been instructed to do so by a third officer, that defendant Cain would release Plaintiff from solitary confinement if Plaintiff "stopped filing ARPs, lawsuits, and dropped [an unrelated] lawsuit now pending trial."   *See* R. Doc. 1 at p. 21.   In the Court's view, this is not probative evidence of retaliation inasmuch as there is nothing that suggests that Plaintiff had been placed in solitary confinement upon orders of defendant Cain, and Plaintiff has conceded that he was released from punitive segregated confinement when his appeal of the disciplinary charge issued against him by defendant Vaughn in December, 2014 was granted and the finding of guilt overturned.

from an item of correspondence (the lone exception noted above), does not implicate the United States Constitution if a viable state post-deprivation remedy exists to redress the loss.   *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 542 (1981).[6]   And in this regard, it is recognized that Louisiana law provides ample remedies under which Plaintiff could have proceeded against defendant Vaughn for recovery of his property or for reimbursement for its loss.   *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984).   Finally, with regard to any alleged interference with Plaintiff's *legal* mail, the Court finds, as discussed below, that Plaintiff has failed to sufficiently allege that he has suffered any cognizable legal prejudice, which is a prerequisite for the assertion of a claim regarding interference with access to the courts.

A substantive right of access to the courts has long been recognized.   *Bounds v. Smith*, 430 U.S. 817, 821 (1977).   Specifically, access to the courts is incorporated into the First Amendment right to petition the government for redress of grievances.   *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979).   In its most obvious and fundamental manifestation, this right protects an inmate's physical access to the courts.   Thus, for example, prison officials may not block or refuse to transmit, through procedural devices, the transmission of legal documents which prisoners wish to send to the courts.   Nor can they take other actions – such as confiscating or destroying legal papers – that would have a similar effect.   *Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989), *overruled on other grounds, Horton v. California*, 496 U.S. 128 (1990).   The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or

---

6    The underlying rationale of *Parratt* and *Hudson* is that when deprivations of property are effected through either negligent or intentional wrongful conduct on the part of state employees, pre-deprivation procedures are simply "impracticable" since the state cannot know in advance when such deprivations will occur.   *Hudson v. Palmer, supra*, 468 U.S. at 533.

conditions of confinement before the courts."   *Lewis v. Casey*, 518 U.S. 343, 356 (1996). Further, in order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that has he suffered some cognizable legal prejudice or detriment as a result of Defendants' actions.   *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).   In addition, Plaintiff must be able to show that Defendants had an intent to interfere with Plaintiff's right to submit pleadings to the courts or were otherwise deliberately indifferent to Plaintiff's wish to do so.   *See Herrington v. Martin*, 2009 WL 5178340, *2 (W.D. La., Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983").   Finally, an inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights.   *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). Therefore, because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court" *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint."   *Id.*

Plaintiff's access-to-courts claim fails in this case, not only because he has failed to suggest that defendants Cain or Vaughn actively intended to interfere with his multiple ongoing legal proceedings, but also essentially because he has failed to sufficiently allege that he has sustained any cognizable legal prejudice.   First, whereas he asserts that his transmission of legal pleadings has been delayed on several occasions, he does not allege, with one exception, that such delay has resulted in any adverse consequences.   And as to that one exception, he asserts only that his transmission of an "*amended* memorandum" to a court – suggesting that he had already submitted an initial memorandum – was delayed and was received by the court only after the case was

dismissed.  *See* R. Doc. 1 at p. 12.  Notwithstanding, Plaintiff provides no information regarding the nature of the underlying cause of action in that case or the substance of the proposed amended pleading, nor has Plaintiff asserted that he filed a motion to re-open the proceedings in light of the alleged delayed transmission and that the motion was denied.  Accordingly, Plaintiff has failed to sufficiently allege that he was in fact prejudiced by the alleged delay.  Further, whereas Plaintiff has alleged that, in one or more instances, a pleading has disappeared and has not been received by a transferee court, Plaintiff acknowledges that, in the one principal instance of which he complains, he requested and obtained an extension of time to re-submit the pleading, *see id.*, and as to other instances, he has failed to allege the nature of any pleadings that were not received or filed or that he was unable to re-submit motions or pleadings that were not docketed.  Based upon these allegations, the Court is unable to conclude that Plaintiff has adequately pleaded a cause of action regarding any actual interference with his access to the courts.

### G.  Plaintiff Fails To State A Claim For Cruel And Unusual Punishment.

Plaintiff also complains, in a supplement to his original Complaint, R. Doc. 7, that he was subjected to unconstitutional conditions of confinement upon his transfer to a Camp J housing unit at LSP in January, 2015.  Specifically, Plaintiff alleges that he was limited to only one hour of yard exercise three times per week, that he had no television or radio, that his store and telephone privileges were restricted, that he was required to wear a jumpsuit that was exchanged only once or twice per week, that he was limited to possessing only legal property in his cell, that he was denied contact visits, that the water in the cell shower was cold for six weeks, that the heaters were turned off in cold weather, and that his cell was filthy, "covered in urine, feces, food and filth" when he was first placed in it, *see id*. at p. 4, and that he was forced to clean it with soap and a rag and without protective gloves.

Plaintiff's allegations in this regard implicate the Eighth Amendment to the United States Constitution and its prohibition against cruel and unusual punishment, including the unnecessary and wanton infliction of pain.   *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)*, citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   The prohibition against cruel and unusual punishment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care.   *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001).   *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones").   A constitutional violation occurs only when two requirements are met.   First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need."   *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter*, *supra,* 501 U.S. at 304.   Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety."   *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).   In applying this standard, the determinative question is whether the defendant prison officials subjectively knew that the inmate plaintiff faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it.   *Farmer v. Brennan, supra*, 511 at 837.   Specifically, prison officials must be shown to have been personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and they also must be shown to have drawn the inference.   *Id.*   While some conditions of confinement may establish an Eighth Amendment violation "in combination," when each would not do so alone, this will occur only when those conditions have a mutually enforcing effect that

produces the deprivation of a single, identifiable human need.   Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.   *Wilson v. Seiter, supra*, 501 U.S. at 305.   Further, conclusory allegations are not sufficient, and a plaintiff must present facts to support what are otherwise broad and conclusory allegations of wrongdoing.   *See Rougley v. GEO Group*, 2011 WL 7796488, *3 (W.D. La. Nov. 7, 2011).

Applying the foregoing standard, the Court again finds that Plaintiff has failed to allege facts sufficient to defeat Defendants' assertion of qualified immunity.   Specifically, the Court finds that Plaintiff's recitation of the foregoing deprivations is essentially one of the "overall conditions" to which he was subjected and does not amount to an identification of any single identifiable human need of which he was deprived.   Without providing a detailed recitation or lengthy string of citations, the Court is aware that numerous courts have addressed the imposition of similar limitations upon inmates' exercise, visitation, property, clothing, telephone, television and radio privileges in connection with disciplinary violations, and have found that these deprivations do not rise to the level of constitutional violations.   Further, whereas exposure to intolerably filthy conditions or to unreasonably cold conditions for periods of time may rise to such a level under certain circumstances, Plaintiff acknowledges that he was provided with materials to clean his cell, and the Court finds that Plaintiff's conclusory allegation that "staff … had the heaters off in the cold weather" is lacking in sufficient detail to support a claim regarding this deprivation.   In addition, Plaintiff has failed to allege that he suffered any illness or adverse health consequences as a result of the alleged conditions, and he has again failed to allege that either defendant Cain or Vaughn was personally involved in subjecting Plaintiff to the asserted conditions, was aware thereof, or was otherwise advised by Plaintiff of the severity thereof.

Accordingly, the Court finds that this claim as well is subject to dismissal as a matter of law.

### H. Plaintiff Fails To State A Claim With Regard To The Imposition Of A "Mail Watch," But May State A Claim With Regard To The Imposition Of A "Mail Block."

Finally, the Court turns to a consideration of Plaintiff's claim regarding the imposition of a "mail watch" in early 2014 and the imposition of a "mail block" in September, 2014. Whereas the Court finds, as to the "mail watch" claim, that Plaintiff has failed to state a viable cause of action, the Court finds, with regard to the referenced "mail block," that additional factual development is warranted and that this claim should therefore be addressed in connection with summary judgment proceedings.

It is well-recognized that inmates have a First Amendment right both to send and receive mail, *see Thornburgh v. Abbott*, 490 U.S. 401 (1989), but it is clear that this right does not preclude prison officials from examining mail to ensure that it does not contain contraband or address matters, such as escape plans or other illegal activity, that may impact upon the security of the prison environment. *See Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). Thus, it is well-settled that a prisoner does not have a constitutional right to complain if his incoming mail is opened and inspected outside of his presence, even if the inspection is in violation of prison rules or regulations, and this rule applies to both legal and personal mail. *See id*. at 825 (recognizing that "the violation of a prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights"). *See also Singletary v. Stalder*, 273 F.3d 1108 (5th Cir. 2001) (affirming that "prisoners do not have a constitutional right to be present when privileged legal mail is opened and inspected"). Outgoing mail, however, to some degree, is distinguished from incoming mail in this context because courts have recognized, with regard to incoming mail, a greater security interest in opening and inspecting

such mail for contraband.   *See Thornburgh v. Abbott, supra*, 490 U.S. at 413.   Thus, the Fifth

Circuit has concluded that prisoners have a right to be free from "arbitrary censorship" of outgoing

mail.   *Brewer v. Wilkinson, supra*, 3 F.3d at 826.   However, "freedom from censorship … is not

the equivalent of freedom from inspection or perusal."   *Wolff v. McDonnell*, 418 U.S. 539, 576

(1974).   Thus, an inspection of outgoing mail, even legal mail, does not appear to be a violation

of an inmate's constitutional rights.   *See, e.g., Boydston v. Blankenship*, 2014 WL 2980760 (N.D.

Tex. June 11, 2014) (and cases cited therein)*, Magistrate Judge's Recommendation adopted,* 2014

WL 2980915 (N.D. Tex. July 2, 2014).

Applying this standard, the Court finds no violation in the imposition of a "mail watch"

restriction with regard to Plaintiff's mail in early 2014.   Pursuant to such "watch," prison officials

apparently subjected Plaintiff's mail to greater scrutiny than normal, but there is no indication that

Plaintiff's mail was censored or that he was prevented from sending or receiving mail as a result

of this restriction.   In contrast, as a result of the imposition of a "mail block" in September 2014,

Plaintiff was in fact allegedly barred from sending anything other than legal mail and mail to

persons who were on his approved visiting list.   There is nothing in the record that clearly reflects

the non-arbitrary rationale for this "censorship" of Plaintiff's mail.   Whereas Plaintiff alleges that

he was told by defendant Vaughn that the "mail block" was requested by defendant Vaughn and

ordered by defendant Cain because Plaintiff had attempted to send mail to members of his victim's

family, Plaintiff vehemently denies that he ever attempted to do so, and he asserts that he was

never issued a disciplinary report charging him with such conduct or otherwise outlining the reason

for the imposed restriction.   Whereas Defendants may well be able to justify the imposition of

the "mail block" by showing a valid reasonable penological justification therefor in accordance

with the analysis set forth in *Turner v. Safely*, 482 U.S. 78 (1987) (setting for a four-part fact-based

analysis for the evaluation of prison regulations and restrictions that impose constitutional limitations upon prisoners), the Court finds that this issue is better addressed with the benefit of an evidentiary showing.   *Cf., Samford v. Dretke*, 562 F.3d 674 (5th Cir. 2009) (upholding a mail block in the form of a "negative mail list" without an evidentiary showing where the restriction placed upon the inmate's ability to send mail was targeted at only specifically named individuals and where a sufficient factual basis was clear on the record because the proscribed individuals were young family members who had witnessed his violent criminal conduct).

## I.   Supplemental Jurisdiction Over State Law Claims Should Be Denied.

Lastly, to the extent that Plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court is authorized to decline the exercise of supplemental jurisdiction if Plaintiff's state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the Court has original jurisdiction, if the Court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.   28 U.S.C. § 1367.   In the instant case, upon a consideration of the claims remaining before the Court, the Court further recommends that supplemental jurisdiction be declined in connection with Plaintiff's potential state law claims.

## RECOMMENDATION

It is recommended that the Court deny the exercise of supplemental jurisdiction in connection with any potential state law claims.   It is further recommended that Plaintiff's Motion for Summary Judgment (R. Doc. 82) be denied and that Defendants' Motions to Dismiss (R. Docs. 44 and 57), be granted in part, dismissing all of Plaintiff's claims asserted against Defendants Cindy Vannoy, Trish Foster, Paul Smith and Amber Vittirai, with prejudice, and dismissing all of Plaintiff's claims asserted against the remaining defendants, Burl Cain and Michael Vaughn,

except Plaintiff's claim asserted against defendants Cain and Vaughn, in their individual capacities, arising out of the imposition of a "mail block" in September 2014.   It is further recommended that this matter be referred back to the Magistrate Judge for further proceedings.

Signed in Baton Rouge, Louisiana, on August 18, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE  JUDGE**