# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRANDON S. LAVERGNE (#424227)**                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                    **NO. 15-0034-BAJ-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.   Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 2, 2018.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRANDON S. LAVERGNE (#424227)**                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                                **NO. 15-0034-BAJ-EWD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Second Motion for Summary Judgment of the remaining Defendants in this case, Burl Cain and Michael Vaughn (R. Doc. 163).   This Motion is opposed.[1]

*Pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against former Warden N. Burl Cain, Legal Programs Director Trish Foster, Major Larry Smith, Major Michael Vaughn, Lt. Cindy Vannoy, Classification Supervisor Amber Vittirai and an unidentified Supervisor of Investigative Services.   Pursuant to prior Rulings in this case, all of Plaintiff's claims have been dismissed except his claim that Defendants Burl Cain and Michael Vaughn violated his constitutional rights by imposing a "mail block" in December 2014, as a result of which Plaintiff was prohibited from sending personal mail to anybody who was not on his approved visitor's list.   As pertinent to the claim remaining before the Court, a summary of Plaintiff's allegations is as follows:

---

1       Plaintiff first asserts that Defendants' Second Motion for Summary Judgment should be denied outright because it was not timely filed within forty-five days of the Court's Order of October 18, 2017 that directed such filing.   *See* R. Doc. 152.   However, inasmuch as Defendants substantially complied with the Court's Order by filing the instant Motion on December 4, 2017, within several days of the deadline, the Court will not penalize Defendants in this fashion.

- At some time after July 2013, Plaintiff was informed by Defendant Vaughn that Plaintiff could no longer send mail to the address of his teenage daughter, Bethany. According to Plaintiff, this was at the request of Bethany's mother, Lainey Martinez, because Plaintiff had filed a lawsuit against Ms. Martinez. *See* R. Doc. 1 at p. 5

- In early 2014, Plaintiff was informed that he was being placed on "mail watch," pursuant to which his mail was subject to being more closely monitored.

- In September 2014, Plaintiff's lawsuit against Lainey Martinez had allegedly proceeded through the courts and was lodged in the United States Supreme Court, and Plaintiff received notice that he was required by Supreme Court rules to send copies of his appellate brief to Ms. Martinez. Because Plaintiff was prohibited from sending mail to Ms. Martinez' address, Plaintiff forwarded the legal paperwork to members of his family for *them* to send to Ms. Martinez. The paperwork addressed to Ms. Martinez was thereafter returned undelivered, however, with a forwarding address for Ms. Martinez' mother, Jessica Vasseur. Accordingly, Plaintiff's family members re-sent the paperwork to Jessica Vasseur, who became upset and complained to the local district attorney and later to prison officials. *See id.* at pp. 5-6.

- Upon learning of the above complaints, LSP Investigator Michael Vaughn ordered that Plaintiff be placed in administrative segregation and also subsequently charged Plaintiff with circumventing or attempting to circumvent a non-contact order.

- On or about December 18, 2014 Plaintiff was informed that he was being placed on "mail block," meaning that he could only send out legal mail and personal mail to persons on his approved visitors' list. When Plaintiff asked why, he was informed that this was requested by defendant Vaughn and ordered by defendant Burl Cain because Plaintiff had contacted

members of his victim's family, which Plaintiff denies. *See id.* at pp. 8-9. Plaintiff complains that numerous items of outgoing mail were thereafter returned to him unsent with notices indicating that he was on "mail block." Plaintiff also complains that other items of outgoing mail were retained by prison officials unsent without any notice to Plaintiff in violation of prison rules.

- On or about December 22, 2014 defendant Vaughn again issued Plaintiff a disciplinary report, this time for sending a Christmas card to Plaintiff's son, Braden. Plaintiff was informed by defendant Vaughn that Plaintiff had been told 2½ years previously not to send mail to his son's address. Plaintiff denies that he was ever so instructed and complains that he was nonetheless improperly found guilty of the charge. It appears that the finding of guilt in connection with this disciplinary report was later overturned on appeal, *see* R. Doc. 62 at p. 9.

- Plaintiff further complained that in February 2015, several letters he had submitted for delivery in the month of January 2015 were not received by the addressees.

Defendants Cain and Vaughn now move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, several written communications received by LSP personnel from persons requesting non-contact with Plaintiff (in September 2012 and July 2013), several Investigation Reports, with supporting documentation, prepared by LSP personnel in connection with non-contact directives and actions taken by Plaintiff in violation of the non-contact directives (in July 2013, September 2014 and December 2014), copies of correspondence and photographs related to non-contact directives, disciplinary reports charged against Plaintiff in connection with alleged attempts to circumvent non-contact directives (in July 2013, September 2014 and December 2014), "mail watch" limitations imposed upon Plaintiff in July 2013 and

September 2014, a "mail block" limitation imposed upon Plaintiff in December 2014, a copy of Department Regulation No. C-02-009 re: Offender Mail and Publications, a copy of LSP Directive No. 16.002 re: Offender Mail, Packages & Publications, and the affidavits of Defendants Burl Cain and Michael Vaughn, submitted in connection with their prior Motion for Summary Judgment. *See* R. Docs. 110-3 and 110-23.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record that demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. However, whereas summary judgment is appropriate when there is no genuine disputed issue as to any material fact, and the moving party is able to show that he is entitled to judgment as a matter of law, Fed. R. Civ. P. 56, the moving party always bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). This is done by informing the Court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no genuine issue of material fact. *Celotex Corp. v.*

*Catrett, supra*, 477 U.S. at 323. The nonmoving party is not required to respond to the motion until the movant has made the required showing in support thereof. *Id*. It is only after the movant has carried his burden of proof that the burden shifts to the non-movant to show that the entry of summary judgment is not appropriate. *See Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000). In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In response to Plaintiff's allegations, Defendants assert that they are entitled to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff's allegations are insufficient to establish that they have participated in a violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct

was unlawful in the situation that he confronted.  *Id.* at 202.  When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009), *citing McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).

Undertaking the qualified immunity analysis with respect to Plaintiff's claims, the Court concludes that Defendants' Motion for Summary Judgment should be granted and that Defendants are entitled to qualified immunity in connection with the claim remaining before the Court.

In summary, the remaining claim before this Court is in connection with Plaintiff's complaint that a "mail block" was imposed in December 2014 that barred him from sending mail to anyone not on his visiting list and not a recipient of privileged legal mail.  *See* R. Doc. 154-4 at p. 2.  It appears that this "mail block" was prepared by Defendant Vaughn and was undertaken at the request of Defendant Cain because Defendant Cain had received a communication from the mother of Plaintiff's deceased murder victim, complaining that Plaintiff had written correspondence to a former friend of the victim, Ashley Says, and requesting that Plaintiff be prevented from writing to people who had previously known her daughter.  *See* R. Docs. 163-14 and 163-16.

It is well-recognized that inmates have a First Amendment right both to send and receive mail, *see Thornburgh v. Abbott*, 490 U.S. 401 (1989).  Notwithstanding, this right is not absolute, and it is clear that it does not preclude prison officials from examining mail to ensure that it does not contain contraband or address matters, such as escape plans or other illegal activity, that may impact upon the security of the prison environment.  *See Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993).  Outgoing mail, to some degree, is distinguished from incoming mail in this context because courts have recognized a heightened security risk with regard to incoming mail because of the possibility of the introduction of contraband into the prison.  *See Thornburgh v.*

*Abbott, supra*, 490 U.S. at 413.   Thus, the Fifth Circuit has concluded that outgoing mail should not be arbitrarily censored.   *Brewer v. Wilkinson, supra*, 3 F.3d at 826.   However, restrictions on outgoing mail that are justified by reasonable and rational penological objectives are not prohibited.   *See Turner v. Safely*, 482 U.S. 78 (1987) (setting forth a four-part fact-based analysis for the evaluation of prison regulations and restrictions that impose constitutional limitations upon prisoners).   *See also Brewer v. Wilkinson, supra*, 3 F.3d at 824 (suggesting that "*Turner's* 'legitimate penological interest' test would also be applied to outgoing mail")*.   *See also Samford v. Dretke*, 562 F.3d 674 (5th Cir. 2009) (same).   Thus, prison regulations that prohibit inmates from sending correspondence to the victims of their offenses or to the families of their victims have been found to be supportable.   *See, e.g.*, LSP Directive No. 16.002 (R. Doc. 163-5 at p. 4). In addition, restrictions placed on an inmate's ability to send mail to persons who have indicated a desire not to receive correspondence are routinely upheld.   *See, e.g., Jones v. Diamond*, 594 F.2d 997, 1014 (5th Cir. 1979) (validating the use of a negative mail list and stating that "jail officials may employ a 'negative mail list' to eliminate any prisoner correspondence with those on the outside who affirmatively indicate that they do not wish to receive correspondence from a particular prisoner").   *See also Samford v. Dretke*, 562 F.3d 674 (5th Cir. 2009) *and cases cited therein* (upholding a mail block in the form of a "negative mail list," even without a specific request for non-contact, where the restriction placed upon the inmate's ability to send mail was targeted at only specifically named individuals and where a sufficient factual basis was clear on the record because the proscribed individuals were young family members who had witnessed his violent criminal conduct).   The question in this case is whether the broader restriction that was placed upon Plaintiff's outgoing mail in this case may be seen to pass constitutional muster.

Although the issue is a close one, the Court ultimately concludes that Plaintiff has failed to

clearly establish the violation of his constitutional rights in the instant case. The supporting documentation and affidavits of the Defendants reflect that Plaintiff has followed a somewhat conflictual path in connection with his outgoing correspondence and that measures were undertaken by prison personnel prior to the imposition of the subject mail block to curb Plaintiff's attempts to address correspondence to persons who had indicated that they did not want to receive correspondence from him. Thus, in September 2012, in accordance with an explicit request from Ms. Patti Turner (the mother of Plaintiff's son Braden Turner), Plaintiff was instructed to refrain from communicating with Ms. Turner or sending correspondence to Ms. Turner's address. Thereafter, on July 3, 2013, pursuant to an explicit request from Plaintiff's ex-wife, Lainey Martinez, Plaintiff was instructed to refrain from sending mail to Ms. Martinez, to Ms. Martinez' minor daughter Bethany, or to any other members of Ms. Martinez' extended family. In connection with this second request, a 60-day "mail watch" was implemented, pursuant to which Plaintiff's mail was subjected to greater scrutiny than normal but not to any direct limitation. Notwithstanding, it appears that on that same date, Plaintiff attempted to circumvent the non-contact directive and addressed a letter to Ms. Martinez, which letter was intercepted by prison personnel on July 9, 2013 and which letter resulted in a disciplinary charge issued against Plaintiff for "Aggravated Disobedience." Thereafter, on September 23, 2014, prison officials learned of another attempt by Plaintiff to circumvent his non-contact directives, this time relative to Ms. Martinez. Specifically, prison officials were advised that Ms. Martinez' mother had received an item of correspondence addressed to Ms. Martinez at the mother's address. Further investigation revealed that this correspondence had actually been sent circuitously, first from Plaintiff to his family members with instructions to forward it to Ms. Martinez, and second from Plaintiff's family members to Ms. Martinez in an attempt to circumvent the prior instruction relative to non-contact.

This item of correspondence resulted in a second disciplinary charge for "Aggravated Disobedience" and also in the imposition of a 180-day "mail watch" on Plaintiff's mail.    Finally, on or about December 16, 2014, Defendant Warden Cain was apparently personally contacted by Joyce Shunick, the mother of Plaintiff's murder victim, who advised Defendant Cain of correspondence that she had either received or been advised of that was addressed by Plaintiff to a close friend of her deceased daughter.[2]    Based upon this communication from Ms. Shunick and the likely distress caused by the referenced correspondence, and in light of the above-related previous events, Defendant Cain contacted Dpty Warden Leslie Dupont with instructions that a "mail block" be placed upon Plaintiff's mail.    Accordingly, pursuant to Defendant Cain's instructions, Defendant Vaughn prepared the subject "mail block" Memorandum and, upon approval by Dpty Warden Dupont, forwarded it to the LSP mail room.    The Court notes, as an aside, that there is some degree of ambiguity in the subject "mail block" Memorandum.    *See* R. Doc. 154-4 at p. 2.    Specifically, although the Memorandum effectively imposed a "Mail Block/Except Visitng [sic] List and Attorney Mail" upon Plaintiff, the Memorandum repeatedly, *i.e.*, no fewer than four times therein, referred to the restriction imposed as being only a "mail watch."

As an additional, but tangential, justification for the referenced "mail block," Defendants point out that during that same month of December 2014, Plaintiff undertook additional conduct that was in violation of prior explicit instructions relative to non-contact.    Specifically, on December 22, 2014, prison personnel intercepted an item of correspondence addressed by Plaintiff

---

2    The Investigation Report prepared in connection with this incident indicates that Defendant Cain was advised by the mother of the victim that she herself had received correspondence from Plaintiff.    Notwithstanding, it appears that the referenced correspondence was actually sent by Plaintiff to one of the former friends of the murder victim, Ashley Says, who then contacted the victim's mother.    See R. Docs. 163-14 and 163-16.

to the address of Ms. Patti Turner, which correspondence included a Christmas card intended for Plaintiff's minor son Braden Turner as well as copies of photographs taken of family members. As indicated above, Plaintiff had been instructed not to send correspondence to Ms. Turner or to her address.   As a result of the referenced correspondence, Petitioner was issued a third disciplinary charge for "Aggravated Disobedience."

In *Turner v. Safely, supra*, the United States Supreme Court concluded that four factors are relevant in deciding whether a prison regulation or restriction that impinges upon an inmate's constitutional rights may withstand a constitutional challenge: (1) whether the regulation or restriction has a "valid, rational connection" to a legitimate governmental interest; (2) whether alternative means are open to the inmate to exercise the asserted right; (3) the impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are ready alternatives that could fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.   *See id.* at 89-91.   *See also Samford v. Dretke, supra*, 562 at 679.   Deference should be afforded to prison administrators' decisions, especially when those decisions deal with issues of prison safety and security.   *Turner v. Safety, supra*, 482 U.S. at 89.   *See also Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004) ("the Court is equally cognizant of the inherent demands of institutional correction, the deference owed to prison administrators, and the subjugation of individual liberty that lawful incarceration necessarily entails").   Rationality is the "controlling factor" in conducting the *Turner* inquiry "and a court need not weigh each factor equally."   *Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008).

In addressing the first prong of the *Turner* analysis, Defendants invoke the legitimate governmental interest in protecting the general public from harassment by inmates.   This

governmental interest has often been invoked by prison administrators in seeking to justify the imposition of restrictions upon the rights of inmates to send correspondence.    *See, e.g., Lavergne v. Martinez*, 2013 WL 3803975 (M.D. La. July 19, 2013) and cases cited therein (denying injunctive relief to plaintiff who sought to be allowed to correspond with his minor daughter notwithstanding the mother's contrary wish).    Thus, Defendants make reference (1) to their prior attempts to limit Plaintiff's communication with certain individuals at the individuals' requests, (2) to the imposition of "mail watch[es]" on multiple occasions, (3) to Plaintiff's several attempts to circumvent the limitations sought to be imposed, and (4) to resulting disciplinary charges levied against Plaintiff in such instances.    Defendants further state that, "[w]ith few alternatives available to them, considering the plaintiff's persistent attempts to undermine the restrictions placed upon him, defendants' decision and actions to block the plaintiff's non-legal mail in order to protect the general public from plaintiff's harassing letters are not so removed from one another that a reasonable finder of fact could conclude that the regulation was arbitrary or irrational."    *See* R. Doc. 163-1 at p. 8.    The Court accepts Defendants' rationale in this regard and agrees that there is a rational relationship between the legitimate governmental interest invoked and the actions taken by Defendants to meet the valid penological objective.    Whereas the Court finds that the actions taken by Defendants in response were likely over-broad in scope, the Court further finds, as discussed hereafter, that other factors tempered the effect of Defendants' actions and effectively limited the deleterious effect thereof.

The second aspect of the *Turner* analysis asks whether alternative means were available to Plaintiff to accommodate his First Amendment rights.    In addressing this inquiry, the Court finds that alternative means of communication were in fact available to Plaintiff.    Specifically, notwithstanding the referenced "mail block," Plaintiff was still allowed to send privileged legal

mail and mail to persons on his approved visitors' list.   Further, his right to *receive* correspondence was apparently not curtailed in any way by Defendants' actions, nor were his visitation rights or telephone rights (limited though they may have been in light of his classification level) impacted by the limitations placed on his ability to send outgoing general mail.   Thus, Plaintiff was not entirely prevented from communicating with persons outside of the prison, and he himself has referred to the instant mail restriction as having been a "partial mail block."[3]   In addition, it has been recognized that an acceptable alternative in the event of restrictions being placed upon an inmate's ability to send mail to certain individuals is the ability to indirectly communicate through the oral relay and exchange of information by and through persons who are not so restricted.[4]   *See Samford v. Dretke, supra* (where the Court noted that the mother of plaintiff's children could "relay" oral messages from the children when she visited and that "[a]lternatives … need not be ideal, however; they need only be available," *citing Overton v. Bazzetta*, 539 U.S. 126, 135 (2003)).   Finally, the Court notes that the restriction placed upon Plaintiff's mail was not apparently perpetual in duration.   Although the "mail block" Memorandum did not designate a specific term or duration, the restriction was imposed, as stated by Defendants, because of "the plaintiff's failure to comply with previous directives not to send mail to … prohibited persons … and the plaintiff['s] continuous circumvention of the

---

3        *See* the Complaint filed in another civil proceeding brought by Plaintiff before this Court, *Brandon Lavergne v Michael Vaughn, et al*., Civil Action No. 16-0400-JWD-RLB, R. Doc. 1 at p. 5, wherein Plaintiff refers to the mail restriction imposed in December 2014 as being a "partial mail block from Dec. 2014 – March 2015."   In that case, Plaintiff is challenging the imposition of a subsequent "mail block" imposed against him in 2016 after he again allegedly undertook to circumvent the prison's mail rules, including by using another inmate's name to send correspondence to a prohibited person.  *See* R. Doc. 154-7.  It appears that that "mail block" restriction has since been lifted.  *See* R. Doc. 154-6.

4        Thus, for example, although Plaintiff complains that he has not able to add certain people to his visitors' list (because of his classification level), he could have orally relayed communications to those individuals by way of the people who were included on his visitors' list.

prohibitions." *See* R. Doc. 163-1 at p. 11.  Thus, as an incentive to encourage Plaintiff to improve his behavior, the "mail block" was likely not intended to be permanent but was subject to being modified upon his exhibiting a willingness to comply with prison rules.  *Cf., Hill v. Terrell*, 846 F. Supp. 2d 488 (W.D. N.C. 2012) (upholding the imposition of periods of censorship imposed upon plaintiff's mail after he repeatedly sent mail to people outside the prison who did not want such communication and noting that the plaintiff was advised, in response to his complaints, that he could request the lifting of the restriction by showing improvement in his behavior "for a reasonable period of time").  In fact, Plaintiff himself has repeatedly stated his understanding that the "mail block" lasted only until March 2015, a period of approximately 90 days.  *See* note 3, *supra*.  *See also, e.g.*, Plaintiff's Interrogatory No. 8 directed to Defendant Vaughn, R. Doc. 142 at p. 5, and Plaintiff's Request for Production of Documents No. 5 directed to Defendants, R. Doc. 146 at p. 3, wherein Plaintiff referred to the termination of the "mail block" in March 2015.[5] Whereas it has not been confirmed that the "mail block" ended at that time, it is clear from Plaintiff's repeated assertions that he did not believe himself to be burdened by the "mail block" thereafter.  Thus, the apparent limited effective duration of the restriction on Plaintiff's mail may also be seen as leaving alternatives open to him to exercise his First Amendment rights upon the cessation thereof.

With regard to the third *Turner* inquiry, *i.e.*, the potential impact upon the institution, guards, inmates and general public if Plaintiff's rights were fully accommodated, the Court finds

---

[5]     It appears that Defendants have not been able to determine when the December 2014 "mail block" terminated in fact or whether it was formally terminated.  The only documentation that has been discovered relative to termination is a memorandum requesting the termination of a *subsequent* "mail block" imposed in 2016.  *See* R. Doc. 154-6.  *See also,* Defendants' Response to Plaintiff's Request for Production No. 5, R. Doc. 146 at p. 3, wherein Defendants assert that, "after exercising due diligence and a faithful inquiry," they have not been able to locate a directive terminating the earlier "mail block" in March 2015.

that this inquiry favors Defendants as well, albeit only minimally.  Specifically, the record reflects that time, effort and prison resources were necessarily expended in investigating and scrutinizing Plaintiff's mail after he repeatedly engaged in conduct that was intended to circumvent verbal instructions and prison directives.   Whereas the Louisiana State Penitentiary maintains a mail room that has as its responsibility the review and inspection of inmate mail, it seems likely that allowing this Plaintiff the unrestricted right to send mail without the imposed limitations would have imposed a burden on prison resources and that limiting Plaintiff's rights in this regard ameliorated that burden to some degree.

Finally, *Turner* inquires whether there are ready alternatives that would have accommodated the right asserted by Plaintiff at a *de minimis* cost to valid penological objectives. In this regard, the existence of obvious easy alternatives may be evidence that the restrictions imposed upon the inmate are not reasonable but are instead an "exaggerated response" to prison concerns.  *Id.*, 482 at at 90.    *Turner*, however, does not require that a "least restrictive alternative" be discovered and implemented, nor do prison officials have to "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint."   *Id*.   Rather, the burden is generally seen to be upon Plaintiff to identify a reasonable ready alternative, and he has not done so in the instant case.   *See Victoria v. Larpenter*, 369 F.3d 475, 484 (5th Cir. 2004) (stating that under *Turner's* fourth factor, "an inmate must present evidence of a ready alternative that fully accommodates a prisoner's rights at *de minimis* cost to valid penological interests").   To the contrary, it appears that prison officials in the instant case had, during the years leading up to the imposition of the subject "mail block," verbally instructed Plaintiff to refrain from sending mail to persons who requested no contact, imposed "mail watches" upon Plaintiff of varying durations, and charged him with disciplinary violations upon his non-

compliance with their directives.

Based on the foregoing, it does not appear that Defendants acted entirely unreasonably in this case in imposing a "mail block" that appears to have been of limited duration, that did not restrict Plaintiff's incoming mail, and that preserved to Plaintiff the ability to correspond with persons on his approved visitors' list and to send privileged legal mail. Had the restrictions imposed in this case been more severe or of longer duration, the Court might be inclined to have greater pause or to engage in additional or more rigorous analysis. Notwithstanding, although the Court expresses reservations about the appropriateness of the imposition of a blanket restriction of extended duration upon the sending of general mail and although the Court views with great seriousness the exercise of inmates' First Amendment rights, the Court's research has not uncovered – and Plaintiff has not cited – any controlling legal authority that categorically forbids the limited "mail block" imposed in the instant case. *Cf., Hill v. Terrell,* 846 F. Supp. 2d 488 (W.D. N.C. 2012) (upholding defendants' action in imposing periods of censorship on the plaintiff's outgoing mail after he sent correspondence to persons who requested non-contact); *Akers v. Watts,* 740 F. Supp. 2d 83 (D.D.C. 2010) (addressing Bureau of Prisons regulations that authorize the imposition of "restricted general correspondence status" upon federal inmates under certain circumstances). *See also Procunier v. Martinez,* 416 U.S. 396, 412 n. 12 (1974) ("We need not and do not address in this case the validity of a temporary prohibition of an inmate's personal correspondence as a disciplinary sanction for violation of prison rules"); *Gilliam v. Quinlan,* 608 F. Supp. 823, 837 (S.D. N.Y. 1985) (expressing reservations about the imposition of a punitive mail prohibition but finding that the defendants were entitled to qualified immunity because they were "operat[ing] in an area in which the law was not charted clearly"). Accordingly, the Court believes that Defendants are entitled to qualified immunity in this case and

that summary judgment should be granted in their favor in connection with this issue.

Turning to Plaintiff's claim that his constitutional right to procedural due process was violated in connection with the imposition of the subject "mail block," because there was no hearing prior to the imposition thereof, the Court concludes that this claim is without merit. Specifically, Plaintiff has not disputed that he was provided with notice that the restriction was being imposed and of the reason for its imposition.   He thereafter had the ability to challenge the actions of prison officials through the filing of an administrative grievance, and he did so.   The essential hallmarks of procedural due process are notice of the imposition of a sanction or restriction and an opportunity to be heard, and these appear to have been provided.   Further, as pointed out by Defendants, the operative prison regulation does not require a hearing prior to the imposition of mail restrictions.   Finally, to the extent that Plaintiff complains that the prison's rules and regulations were not followed in connection with the "mail block," this is clearly not a claim of constitutional dimension.   *See, e.g., Samford v. Dretke, supra*, 562 F.3d at 681, *and cases cited therein*.    Accordingly, this aspect of Plaintiff's claim should also be denied.

<u>RECOMMENDATION</u>

It is recommended that the Motion for Summary Judgment of Defendants Burl Cain and Michael Vaughn (R. Doc. 163), be granted, dismissing Plaintiff's claims asserted against these defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on March 2, 2018.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**